1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                          EASTERN DISTRICT OF CALIFORNIA

8

| | | |
|---|---|---|
| 9 | In re | ) |
| | | ) |
| 10 | ROGELIO A. CASIMIRO and BELEN T. | ) |
| | CASIMIRO | ) |
| 11 | | ) |
| | Debtors. | ) |
| 12 | ———————————————— | ) |
| | | ) |
| 13 | ARNALDO LARA, et al., | ) |
| | | ) |
| 14 | Plaintiffs, | ) |
| | | ) |
| 15 | v. | ) |
| | | ) |
| 16 | ROGELIO A. CASIMIRO, et al., | ) |
| | | ) |
| 17 | Defendants, | ) |
| | ———————————————— | ) |

DISTRICT COURT CASE
NO. CIV-F-06-0028 AWI SMS

BANKRUPTCY COURT CASE
NO. 05-19558-B-7

ADVERSARY PROCEEDING
NO. 05-01401

ORDER RE: MOTION TO
WITHDRAW REFERENCE

18

19

20          Plaintiffs move to withdraw reference of the adversary proceeding (which was originally

21  removed from state court) from bankruptcy to district court.  Defendants oppose the motion,

22  seeking to have the bankruptcy court entertain a motion for remand instead.  Oral argument on

23  the matter was held on April 17, 2006.

24

25                                    **I. History**

26          Plaintiffs are agricultural and packing shed employees or former employees of table grape

27  growers in the Central Valley of California.  The only active defendants remaining in this case

28  are table grape growers Stevco, Inc. and FAL Inc. dba Lucich Family Farms (collectively

1

1   "Defendants").  The case that forms the basis of this adversary action was commenced on March

2   5, 2004 in the Superior Court of California, County of Kern (No. S-150 CV 252445 SPC).  The

3   parties have not provided the court with any copies of the state court proceeding.  In the original

4   complaint, Plaintiffs only sued Rogelio Casimiro dba Golden Grain Farm Labor ("Casimiro")

5   and a number of named entities currently unknown to this court ("Unknown Defendants")

6   Casimiro was a farm labor contractor that arranged employment for agricultural workers with

7   table grape growers.  According to Defendants, "By the end of April 2005, [Casimiro and the

8   Unknown Defendants] had successfully moved for summary disposition of several claims,

9   including claims framed to represent the interests of others situated similarly to the named

10  Plaintiffs and/or the public interest. Following the motion, allegations and claims directed

11  primarily at an individual defendant, Rogelio Casimiro, remained in that state court action." Doc.

12  2, Opposition, at 3:4-8.  The Unknown Defendants were dismissed from the case.  A first

13  amended complaint was filed in June 2004.  On September 21, 2004, Plaintiffs filed a second

14  amended complaint, termed a class action suit, which added Stevco, Lucich, El Rancho Farms

15  and Castlerock Farming and Transport Inc. as defendants.

16          From filings in related cases, the court gathers that Plaintiffs generally allege the various

17  defendants forced employees to work off the clock, forced employees to purchase tools out of

18  pocket, failed to pay minimum wages, failed to provide mandated rest and meal periods, failed to

19  keep accurate itemized wage statements, etc.  The parties have not provided the court with a copy

20  of the operative second amended complaint or indeed any complaint.  However, Defendants

21  represent that the complaint includes the following section:

22      **Jurisdiction, Venue, and Non-Removability**
        5. The total amount in controversy for each of the named Plaintiffs' claims and at least
23      one member of the Class (and likely all of the Class) is less than seventy-five thousand
        dollars ($75,000.00). In addition, as masters of their complaint, Plaintiffs assert no claims
24      arising from federal law or to which federal courts have exclusive or original jurisdiction.
        Rather, Plaintiffs bring causes of action based solely on, and arising from, California law,
25      and laws in which no federal court has original jurisdiction. This action predates any
        federal legislation relating to class actions as this actions was commenced prior to such
26      litigation.

27  Doc. 2, Opposition, at 3:11-19.  On October 12, 2005, Casimiro filed for Chapter 13 bankruptcy,

28  (bankruptcy number 05-19558-B-13).  The case against him was stayed; he is not an active

1  defendant.  On December 12, 2005, Plaintiffs removed the state case to the Eastern District of

2  California under 28 U.S.C. §1452 on the basis that it was related to a bankruptcy, where it was

3  automatically referred to bankruptcy court pursuant to 28 U.S.C. §157(a).

4      Immediately afterwards, on December 15, 2005, Plaintiffs filed a motion (in bankruptcy

5  court) to withdraw reference of the adversary proceeding to district court. Doc. 1, Part 4.[1]  On,

6  December 23, 2005, Defendants filed a joint statement in response to the notice of removal in

7  accordance with Fed. R. Bankr. Proc. 9027(e)(3). Doc. 1, Part 9.  Such a statement is equivalent

8  to an answer.  On January 5, 2006, Plaintiffs filed notices dismissing Castlerock and El Rancho

9  without prejudice pursuant to Fed. R. Civ. Proc. 41(a)(1)(i) as those two defendants had not yet

10  filed an answer. Doc. 1, Parts 14 and 15.  Plaintiffs state that in addition to dismissing Castlerock

11  and El Rancho, they "will ask this Court to dismiss without prejudice parties that have answered,

12  namely, Stevco, Inc. and FAL, Inc. dba Lucich Farms. The claims of Plaintiffs against these

13  growers can then proceed in the [related case] in district court, where these defendants have been

14  named and served." Doc. 1, Part 16, Reply, at 2:24-3:3.  Plaintiffs represent that Stevco and

15  Lucich "have declined to enter a stipulation of dismissal without prejudice." Doc. 9, Raisner

16  Declaration, at 2:20-21.

17      Meanwhile, in bankruptcy court, Defendants made a motion to remand the proceeding to

18  state court under 28 U.S.C. §1452(b).  Plaintiffs opposed the motion, and a hearing was held on

19  April 6, 2006.  The parties agreed that any ruling of the bankruptcy judge must be reserved until

20  after this motion to withdraw reference is decided by this court.

21      On January 12, 2006, Defendants filed their opposition to the withdrawal motion. Doc. 2.

22

23      [1]This case appears related to three others currently before the district court.  The other
cases were initially assigned to Judge Van Sickle, before they were all reassigned to Judge Ishii
24  on March 1, 2006.  In all of these cases agricultural worker plaintiffs are suing table grape grower
25  defendants.  There are two groups of plaintiffs' attorneys that are seeking to be named class
counsel in any consolidated case.  On December 15, 2005, Plaintiffs, in one of the related cases,
26  filed an ex parte application before Judge Van Sickle to stay all actions of the bankruptcy court in
this adversary proceeding.  Plaintiffs sought to prevent Defendants from making a motion before
27  the bankruptcy judge for remand back to state court.  No formal ruling was ever made on the ex
28  parte request.

On February 10, 2006, Plaintiffs formally made a motion in district court to withdraw reference of the adversary proceeding with a hearing set for March 13, 2006. Doc. 7.  The case was initially assigned to Judge Ishii, but was reassigned to Judge Van Sickle on February 14, 2006, before being reassigned back to Judge Ishii on March 1, 2006. Docs. 11 and 13.  The hearing date was reset by the court for April 10, 2006. Doc. 15.  By stipulation of the parties, the hearing was reset and took place on April 17, 2006. Doc. 17.

Both sides have accused each other of filing late or "supernumerary" papers.  As the procedural rules concerning this tangle of motions is complex and any violation of rules has been minor, the court will consider all papers filed.

## II. Legal Standards

Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984 in response to the Supreme Court Case, <u>Northern Pipeline Construction Co. V. Marathon Pipe Line Co.</u>, 458 U.S. 50 (1982), which held the Bankruptcy Act of 1978 had "impermissibly shifted essential attributes of judicial power from the Article III district court to its non-Article III adjunct, the Bankruptcy court." <u>Security Farms v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers</u>, 124 F.3d 999, 1008 (9th Cir. 1997).  Under the 1984 law, district courts were given original jurisdiction over all cases arising under title 11 of the Bankruptcy Code, but "allowed federal courts to 'refer' bankruptcy cases to the bankruptcy judges for the district automatically. This authority was tempered, however, with a provision that the reference may or shall be withdrawn in certain situations." <u>In re Vicars Ins. Agency, Inc.</u>, 96 F.3d 949, 951 (7th Cir. 1996), citations omitted.  Title 28 U.S.C. §157(d) states, "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."  This language "contains two distinct provisions: the first sentence allows permissive withdrawal, while the second sentence requires

1   mandatory withdrawal in certain situations." <u>In re Coe-Truman Technologies, Inc.</u>, 214 B.R. 183,

2   185 (N.D. Ill. 1997).  "The burden of demonstrating both mandatory and discretionary

3   withdrawal is on the movant." <u>In re U.S. Airways Group, Inc.</u>, 296 B.R. 673, 667 (E.D. Va.

4   2003).

5       "There is no statutory definition of what constitutes 'cause shown' under 28 U.S.C. §

6   157(d). Typically, courts will first consider whether the proceeding is core or non-core, and will

7   thereafter evaluate a number of factors, including whether there has been a jury demand and

8   judicial economy considerations." <u>In re Lars, Inc.</u>, 290 B.R. 467, 469 (D.P.R. 2003).  However,

9   withdrawal need not be complete.  "The Court has the option of withdrawing the entire adversary

10   matter, or withdrawing only the trial portion, leaving the pre-trial and discovery matters to be

11   handled by the bankruptcy judge." <u>In re Lars, Inc.</u>, 290 B.R. 467, 469 (D.P.R. 2003).  The Ninth

12   Circuit counsels that "a district court should consider the efficient use of judicial resources, delay

13   and costs to the parties, uniformity of bankruptcy administration, the prevention of forum

14   shopping, and other related factors." <u>Security Farms v. International Brotherhood of Teamsters,</u>

15   <u>Chauffeurs, Warehousemen & Helpers</u>, 124 F.3d 999, 1008 (9th Cir. 1997), citing <u>In re Orion</u>

16   <u>Pictures Corp.</u>, 4 F.3d 1095, 1101 (2nd Cir. 1993).

17       In that same case, the Ninth Circuit stated in dictum that mandatory withdrawal of the

18   reference hinged "on the presence of substantial and material questions of federal law." <u>Security</u>

19   <u>Farms v. International Bhd. of Teamsters</u>, 124 F.3d 999, 1008 n.4 (9th Cir. 1997).  To date, there

20   appears to be no Ninth Circuit case that has dealt directly with standards for mandatory

21   withdrawal.  The "substantial and material consideration" standard has received criticism

22   because it begs the question of what constitutes substantial and material consideration. <u>In re U.S.</u>

23   <u>Airways Group, Inc.</u>, 296 B.R. 673, 678 (E.D. Va. 2003).

24       "Three conditions must be met before mandatory withdrawal is appropriate: (1) the

25   person seeking withdrawal must be a party to the proceeding; (2) the motion to withdraw the

26   reference must be timely filed; and (3) resolution of the proceeding must require consideration of

27   both the Bankruptcy code and of non-bankruptcy federal statutes regulating interstate

28   commerce." <u>In re Camden Ordnance Mfg. Co. of Arkansas, Inc.</u> 245 B.R. 794, 805-806 (E.D. Pa.

1  2000), citations omitted.  "Overwhelmingly courts and commentators agree that the mandatory

2  withdrawal provision cannot be given its broadest literal reading, for sending every proceeding

3  that required passing 'consideration' of non-bankruptcy law back to the district court would

4  'eviscerate much of the work of the bankruptcy courts,' From a litigant's perspective, such a

5  reading would also create an 'escape hatch' by which bankruptcy matters could easily be

6  removed to the district court." <u>In re Vicars Ins. Agency, Inc</u>. 96 F.3d 949, 952 (7th Cir. 1996),

7  citations omitted.

8

9                                    **III. Discussion**

10          In this case, Plaintiffs appear to be moving for permissive withdrawal of a non-core

11  proceeding under 28 U.S.C. §157(d). Doc. 1, Part 5, Memorandum, at 5:26-28.  "Reference

12  should be withdrawn on the grounds that this adversary proceeding is a non-core bankruptcy

13  related action, a class action in which jury trial has been demanded and the Plaintiffs do not

14  consent to a jury trial before the bankruptcy judge. Additional grounds for withdrawal of the

15  reference of this adversary proceeding are that it is related to another class action already on file

16  in the district court....Withdrawal of reference will benefit all parties and the court and favor

17  judicial economy, and it will guard against the danger of inconsistent rulings by different

18  tribunals." Doc. 1, Part 4, Motion, at 2:6-15; Doc. 7, Motion, at 2:13-23.  In sum, Plaintiffs offer

19  two reasons in favor of withdrawal: (1) the non-consent to jury trial before the bankruptcy judge

20  and (2) the class action nature of the case, related to other pending cases, which would be more

21  efficiently handled in district court.  In response, Defendants substantively argue that

22  withdrawing the matter would (1) aid Plaintiffs' forum shopping and (2) generate inefficiency.

23  Doc. 2, Opposition, at 5:1-5 and 10:13-20.

24

25  **A. Jury Trial**

26          Under 28 U.S.C. §157(e), "If the right to a jury trial applies in a proceeding that may be

27  heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if

28  specially designated to exercise such jurisdiction by the district court and with the express

1    consent of all the parties." Here, Plaintiffs have refused consent for a jury trial in bankruptcy

2    court. As the Seventh Amendment still applies to matters related to bankruptcy, "Withdrawal of

3    the reference is therefore required in instances where a defendant who is entitled to a jury trial

4    does not consent to the holding of such trial in the Bankruptcy Court." United States ex rel.

5    Rahman v. Oncology Assocs., P.C., Civ. Nos. H-95-2241, H-00-1216, H-00-1569, 2000 U.S.

6    Dist. LEXIS 22185, at *21-22 (D. Md., July 24, 2000). The refusal of consent is not dispositive

7    as only some claims entitle the parties to a jury trial. "Two questions resolve the issue of

8    whether a particular claim entails a right to trial by jury: first, whether the action or its analog

9    was historically tried to juries at the time the Seventh Amendment was adopted in 1791, and

10   then, whether the relief sought is legal or equitable in nature. The latter determination is the most

11   important part of the analysis." Malone v. Norwest Fin. Cal., Inc., 245 B.R. 389, 399 (E.D. Cal.

12   2000), citing Tull v. United States, 481 U.S. 412, 417-18 (1987) and Wooddell, Jr. v.

13   International Broth. of Elec. Workers, Local 71, 502 U.S. 93, 97 (1991). In this case, the parties

14   have not provided the court with a copy of the operative complaint or specified which causes of

15   actions are at issue. At oral argument, Defendants pointedly declined to oppose Plaintiffs'

16   assertion that they have a right to jury trial. Nevertheless, agreement by the parties to have a jury

17   trial does not give rise to a Seventh Amendment right to that effect. Under these circumstances,

18   the court will not speculate as to the legal or equitable nature of the claims.

19

20   **B. Forum Shopping**

21        Defendants argue that Plaintiffs have been forum shopping as they have faced "state court

22   defeats." Doc. 2, Opposition, at 15:6. At oral argument, Defendants pointed to Ninth Circuit

23   precedent concerning the relevance of forum shopping considerations: "In determining whether

24   cause exists [for permissive withdrawal], a district court should consider the efficient use of

25   judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the

26   prevention of forum shopping, and other related factors." Security Farms v. International Bhd. of

27   Teamsters, 124 F.3d 999, 1008 (9th Cir. 1997), citing In re Orion Pictures Corp., 4 F.3d 1095,

28   1101 (2nd Cir. 1993). While the history of Plaintiffs' filings (in this case and related cases) is

1    certainly suspicious, Defendants have not fully substantiated their claim that Plaintiffs received

2    adverse rulings in their state court case.  As Plaintiffs stated at oral argument, Defendants have

3    not provided copies of these rulings, and the court does not know the actual import of the alleged

4    rulings.

5           Furthermore, the concern for forum shopping in relation to motions to withdraw generally

6    refers to parties' forum shopping between the bankruptcy and district courts.  As in this case,

7    Security Farms dealt with a situation where there was a motion to remand before the bankruptcy

8    judge and a motion to withdraw before the district court judge.  While the motion to withdraw

9    was pending, the bankruptcy judge granted the motion for remand which was stayed.  The district

10   court ultimately granted the motion to withdraw.  In denying the appeal of that decision, the

11   Ninth Circuit stated the following: "we reject the [appellants'] claim that the district court's

12   decision encourages forum shopping. [Appellants'] argument misstates the effect of the district

13   court's decision to withdraw the reference....[Appellants'] real complaint is not with the

14   withdrawal of the reference, but with Judge Orrick's implicit rejection of the bankruptcy court's

15   remand of the [appellants'] case to the state court." Security Farms v. International Bhd. of

16   Teamsters, 124 F.3d 999, 1009 (9th Cir. 1997).  As the motion to withdraw was made before the

17   bankruptcy judge handed down his/her order granting remand, the decision to make such a

18   motion, at first glance, would not seem to be motivated by forum shopping.  Though the Ninth

19   Circuit did not give weight to appellants' argument, it appears to recognize that forum shopping

20   concerns (for motions to withdraw) lay between the bankruptcy and district courts, not federal

21   and state courts.  In another case, the Ninth Circuit reversed withdrawal of reference, in part on

22   the basis that "the district court's action encouraged forum shopping by essentially reversing the

23   bankruptcy court's prior determinations." In re Canter, 299 F.3d 1150, 1154 (9th Cir. 2002).

24          Other circuits have similarly considered forum shopping in that context. See In re Pruitt,

25   910 F.2d 1160, 1168 (3rd Cir. 1990) (by withdrawing the matter, "the district court has, in effect,

26   derailed the appellate process provided by statute. Moreover, allowing the [debtor] a second

27   opportunity to adduce the facts will encourage forum shopping"); In re Powelson, 878 F.2d 976,

28   982 (7th Cir. 1989) ("resolve the fundamental question whether the district court may indefinitely

1   postpone an appeal from the bankruptcy court and pursue the matter under consideration as one

2   of original jurisdiction"); In re Simmons, 200 F.3d 738, 742 (11th Cir. 2000) (reversing

3   withdrawal of reference, "It can be inferred from the district court's memorandum order that the

4   district court assumed there were no claims against the bankruptcy estate, and that the case was

5   being handled inappropriately by the bankruptcy court").

6       In this case, Plaintiffs made a motion to withdraw before any motion for remand was

7   made by Defendants.  Though they plainly did all they could to prevent any decision on a motion

8   for remand before this motion for withdrawal could be heard, it does not necessarily follow that

9   Plaintiffs are trying to second guess the bankruptcy court's actions in any way.  Indeed, there has

10  been no substantive ruling from the bankruptcy court which would give Plaintiffs any indication

11  as to whether that court might tend to be favorable or unfavorable to their claims.

12

13  **C. Class Action and Efficiency**

14      The bankruptcy court has not dealt with any substantive issues in this adversary

15  proceeding.  Indeed, due to Plaintiffs' actions, the bankruptcy court had this adversary

16  proceeding for a total of three days before this motion to withdraw was filed.  Plaintiffs originally

17  argued that "Another consideration is avoidance of delay, which can result through sometimes

18  unexpected turns of the bankruptcy process." Doc. 1, Part 5, Memorandum at 5:22-23.  The case

19  is stayed as to Casimiro, the party in bankruptcy.  At oral argument, Plaintiffs represented that

20  Casimiro has been discharged and that his bankruptcy would not impact the timing of this

21  adversary proceeding.

22      However, Plaintiffs still argue that "The action is a large class action that would be more

23  economical to try in the district court, which is handling a very similar large class action just

24  filed, and regularly handles class actions such as this." Doc. 1, Part 5, Memorandum, at 5:15-17.

25  As has been said by one court in the Eastern District, "Although bankruptcy courts are

26  empowered to oversee class actions, there is little reason to assume that they regularly do so. On

27  the other hand, the district court has long experience in the management of this complex class of

28  litigation." Malone v. Norwest Fin. Cal., Inc., 245 B.R. 389, 400 (E.D. Cal. 2000).  Having the

1   bankruptcy court handle a class action suit would indeed impose a burden on that court and

2   would not be an "efficient use of judicial resources." <u>Security Farms v. International Brotherhood</u>

3   <u>of Teamsters, Chauffeurs, Warehousemen & Helpers</u>, 124 F.3d 999, 1008 (9th Cir. 1997).

4          On the other hand, Defendants argue the exact opposite, claiming that this motion has

5   "compell[ed] considerable needless briefing and inefficiency, which granting their motion would

6   only prolong." Doc. 2, Opposition, at 10:15-17.  However, the whole of Defendants' claim is that

7   this proceeding should be remanded to state court, and that any motion not dedicated to that end

8   constitutes inefficiency.  Defendants argue that since the bankruptcy court has already been

9   briefed on a motion for remand, letting that court decide the motion would be more efficient.

10  This is not a motion for remand, but rather a motion for withdrawal.  Defendants do not represent

11  that the actual substance of this matter would be better handled in bankruptcy court rather than

12  district court.

13         On balance, the fact that this case is a class action suit counsels against leaving it with the

14  bankruptcy court.  Following the reasoning in <u>Malone</u>, the court finds that efficiency counsels

15  withdrawal of class actions to district court.

16

17                                          **IV. Order**

18         Plaintiffs' motion for withdrawal of reference for adversary proceeding number 05-01401

19  is GRANTED.

20         Defendants' motion for remand, pending in bankruptcy court, is rendered moot.  If

21  Defendants wish pursue remand, they must file their motion anew in district court.

22

23  IT IS SO ORDERED.

24  **Dated:    June 5, 2006**                    **/s/ Anthony W. Ishii**
    0m8i78                                        UNITED STATES DISTRICT JUDGE

25

26

27

28